UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CV-339-F

| | |
|---|---|
| THOMAS R. STORKAMP ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | O R D E R |
| ) | |
| PETE GEREN,[1] SECRETARY ) | |
| DEPARTMENT OF THE ARMY, ) | |
| WOMACK ARMY MEDICAL CENTER, ) | |
| FT. BRAGG, NORTH CAROLINA, ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on motion [DE-31] of Defendant for summary judgment. The matter has been fully briefed, and is therefore ripe for disposition.

## I. STATEMENT OF THE CASE

**A. Administrative Phase**

Plaintiff, a licensed practical nurse at Clark Health Clinic, Womack Army Medical Center, Fort Bragg, North Carolina ("WAMC"), was suspended for thirty days based on charges of: (1) "Conduct Unbecoming a Federal Employee;" and (2) "Inappropriate Conduct Causing Anxiety and Disruption in the Workplace." [DE-34] Ex. 32, Notice of Suspension, pp. 1–2.[2] Plaintiff appealed his suspension to the Merit Systems Protection Board ("MSPB") alleging retaliation for protected equal employment opportunity ("EEO or EEOC") activity and disability discrimination. [DE-32], Ex. 1, Pl. MSPB Complaint. While Plaintiff's MSPB appeal was pending, WAMC's Chief of Staff rescinded Plaintiff's suspension due to a perceived "procedural

---

[1] On July 16, 2007, Pete Geren became the Secretary of the Army and is properly substituted for Francis J. Harvey pursuant to Federal Rule of Civil Procedure 25(d).

[2] All citations to Exhibits refer to those filed in support of Defendant's Motion for Summary Judgment.

error." [DE-34], Ex. 35, Mem. Rescinding Suspension. In light of the rescission, the MSPB Administrative Judge ("AJ") declined to make findings on the merits of WAMC's suspension action, but did address Plaintiff's "outstanding claims for disability discrimination, retaliation and compensatory damages." [DE-34], Ex. 36, MSPB Order, pp. 1-2. After conducting a hearing, the AJ determined Plaintiff's retaliation claim was without merit because Plaintiff failed to establish a nexus between his prior EEO activity and the suspension action. [DE-34], Ex. 37, MSPB Dismissal of Appeal, p. 6. Additionally, the AJ determined Plaintiff failed to establish coverage for disability discrimination under the Rehabilitation Act, and even if he had, that Defendant had shown a legitimate, nondiscriminatory reason for the thirty day suspension. *Id.* at pp. 7-13. Plaintiff's petition to the Board for further review was denied, and a final order entered on May 17, 2006. [DE-35], Ex. 39, MSPB Final Order.

Plaintiff filed a timely petition with the EEOC seeking a review of the MSPB's final order. [DE-35], Ex. 41, Decision of EEOC. On July 24, 2006, the EEOC issued a decision concurring with the MSPB's findings. *Id.*

**B. Judicial Phase**

Plaintiff, proceeding *pro se*, initiated this action on August 24, 2006. [DE-1], Compl. Plaintiff's Complaint alleges discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Rehabilitation Act of 1973, as amended 29 U.S.C. § 791 *et seq.* ("RA"). *Id.* Specifically, Plaintiff claims he was discriminated against on the basis of his gender and alleged disability, and retaliated against for prior EEO actions initiated by him. *Id.* at ¶¶ 4, 6.

On December 22, 2006, Defendant filed a Motion to Dismiss [DE-3] pursuant to Federal Rule of Civil Procedure 4(m), which governs the time limit for service of process. Subsequently,

2

Plaintiff was allowed two extensions to effect proper service [DE-7, DE-14]. On March 27, 2007, Plaintiff effected proper service on Defendant, but did not provide proof of service to the court. On May 9, 2007, the court ordered Plaintiff to provide proof of service within fifteen days or suffer dismissal of his claims [DE-16]. Plaintiff provided proof of service on May 21, 2007 [DE-17/-18/-19/-20/-21/and-22].

On June 19, 2007, Defendant notified the court [DE-25] that case 5:05-CV-523-F, involving Plaintiff and Defendant, was being considered within the District. Accordingly, as a related case, the instant case was reassigned to the undersigned on June 21, 2007 [DE-26].

On July 25, 2007, Defendant filed a motion to stay discovery [DE-30] until disposition of its summary judgment motion [DE-31]. Magistrate Judge Daniel issued a stay [DE-40] "pending a ruling on the pending summary judgment motion or until October 5, 2007, whichever comes first." Following the expiration of the stay order, Defendant noticed the court [DE-46] that it had mailed Plaintiff "a copy of the administrative record and a copy of transcripts from depositions taken during the administrative phase of this case . . . out of an abundance of caution, as [Plaintiff] ha[d] suggested in court filings that he may not have copies of all of these records."[3]

On July 27, 2007, Defendant filed the instant motion for summary judgment [DE-31]. Plaintiff responded [DE-43], Defendant replied [DE-44], and Plaintiff filed a sur-reply [DE-45].

---

[3] This court notes Plaintiff was represented by counsel during the administrative phase of this case. At that time, both parties had the opportunity to fully develop the administrative record.

3

## II. STATEMENT OF THE FACTS

On June 7, 2005,[4] Storkamp stated to his co-worker, Dorothy Denise McAuly ("McAuly"), "you know, there's times (or sometimes) you'd just like to shoot somebody." [DE-45] Pl. Sur-Reply, p. 1. When McAuly asked Storkamp the source of his problem, he responded, "ah, everything, everybody, the whole clinic." *Id.*; *See also* [DE-32], Ex. 9, Dep. of D. McAuly, p. 5. Plaintiff claims his statement was a "figure of speech said out of frustration during an exasperating day, but [he] had absolutely no intention of threat or harm to anyone." [DE-45], Pl. Sur-Reply, p. 1. The statement was made in an open lobby area inside Clark Health Clinic. [DE-33], Ex. 10, Pl. letter to Col. Liffrig, p. 1. McAuly reported the conversation to Storkamp's nursing team leader, Sheila Huttner ("Huttner"),[5] and subsequently to the head nurse of Clark Clinic, Major Jennifer Constantian ("Constantian"). [DE-32], Ex. 9, Dep. D. McAuly, pp. 25-28.

Constantian questioned Storkamp, who admitted to making the statement. [DE-33], Ex. 10, Pl. Letter to Col. Liffrig, p. 2. During his meeting with Constantian, Storkamp also expressed his "irritations with Ms. Huttner and [his] desire to change [nursing] teams." *Id.*

On June 15, 2005, Huttner alleged that Storkamp stared at her in a threatening manner during the team's morning meeting causing her to "feel very unsafe and afraid," especially in light of Storkamp's statement to McAuly a few days prior. [DE-33], Ex. 12, Sworn Statement of S. Huttner, p.1. After the meeting concluded, Huttner reported her concerns to the administrative office. [DE-33], Ex. 17, Written Stmt. of S. Huttner. Later that day, the primary care

---

[4] The administrative record references June 9, 2005, as the date of the incident. However, Storkamp claims the verbal exchange occurred on June 7, 2005. [DE-32], Ex. 10, Pl. Letter to Liffrig, p. 1. Viewing the facts in a light most favorable to the non-moving party, this court accepts Plaintiff's date, but notes that the *substance* of the statement is not in dispute.

[5] The nursing staff at Clark Health Clinic was divided into three teams, each with a "team leader." Huttner was the leader of Storkamp's team.

4

noncommissioned officer at Clark Health Clinic, Lawrence D. Love, placed Storkamp on administrative leave for two days, and eventually extended the leave indefinitely pending an investigation. [DE-33], Ex. 24, Mem. of L. Love. Storkamp denies intentionally intimidating Huttner stating, "I did have my eyes on Ms. Huttner – she was conducting the morning meeting!" [DE-43], Pl. Resp. to Def. Mem. in Supp., p. 4. Additionally, Storkamp explains his physical demeanor during the meeting as that of a person in "extreme pain" resulting from a fall at his home the previous night. *Id.*

Womack Commander, Colonel Ronald Maul ("Maul"), assigned Major Renee M. Ponce ("Ponce") to investigate Storkamp's conduct and management's decision to place him on administrative leave. [DE-34], Ex. 25, Mem. Appointing Ponce. Ponce's investigation found "[Storkamp] did in fact make threatening statements about bringing a gun into the workplace . . . . This event has had a lasting traumatic impact on the staff of Clark Health Clinic." [DE-34], Ex. 26, Ponce Mem., p. 1. Additionally, Ponce found "[Storkamp] actively intimidated Ms. Huttner." *Id.* Ponce noted concerns about Storkamp's "mental stability" in light of "frequent mood swings and statements of his intention to end his life." *Id.*

On August 1, 2005, Storkamp returned to his duties at Clark Health Clinic and was notified of a proposed thirty day suspension by the officer in charge, Major Andrew Landers ("Landers"). [DE-34], Ex. 27, Notice of Proposed Suspension. On August 18, 2005, due to the relocation of the initial deciding official, Landers reissued the proposed thirty day suspension identifying a new deciding official, Lieutenant Colonel James R. Liffrig, Chief, Dept. of Family Medicine ("Liffrig"). [DE-34], Ex. 29, Revised Notice of Proposed Suspension. The second proposal, like the first, charged Storkamp with: (1) conduct unbecoming a federal employee based on his June 7, 2005 statement, and (2) inappropriate conduct causing anxiety and

5

disruption in the workplace based on the June 15, 2005 team meeting. *Id.* Storkamp met with Liffrig in person, and also submitted a nine page written response to the charges. [DE-34], Ex. 10, Pl. Letter to Col. Liffrig. On October 4, 2005, Liffrig sustained the charges and issued Storkamp a notice of thirty day suspension, without pay, effective November 1, 2005. [DE-34], Ex. 32, Notice of Suspension.

On December 28, 2005, after Storkamp had already served his suspension, and had filed his complaint with the MSPB, WAMC's Chief of Staff, Colonel Kenneth Canestrini, "rescinded" Storkamp's suspension due to what he perceived to be a "procedural error" with the processing of the action. [DE-34], Ex. 35, Canestrini Mem. Thereafter, Storkamp's record was purged of any reference to the action, and Storkamp was given back-pay and related benefits. [DE-34], Ex. 34, Decl. of Q. Amos, pp. 1-2 (noting the actions taken to expunge Storkamp's record of reference to the suspension). The aforementioned appeals and instant case followed.

### III. STANDARD

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any

one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## IV. ANALYSIS

### A. Title VII Claims

#### 1. Gender discrimination

Defendant contends that Plaintiff's claim of gender discrimination must be dismissed as a matter of law for failure to exhaust administrative remedies. A person who complains of a violation of Title VII is required to file an administrative charge with the EEOC and allow the agency an opportunity to act on the charge. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 137 (4th Cir. 1995); *see also Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claims before the EEOC."). Even after the aggrieved party has exhausted the administrative remedies, the allegations contained in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). Consequently, the Fourth Circuit has held that "if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." *Id.* Administrative charges, however, typically are not drafted by persons educated in the law, and thus courts are to construe them liberally. *Alvarado v. Bd. of Trs. Of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

7

In the instant case, Storkamp initiated administrative action through an appeal of his suspension to the MSPB. In his MSPB Complaint, Storkamp utilized continuation sheets to elaborate on his answers to several questions on the MSPB Appeals Forms:

> I. "Agency put Appellant on administrative leave and then suspended Appellant due to Appellant's **disabling medical condition** and for **reprisal due to Appellant's engaging in prior protected activity**." [DE-32], Ex. 1, MSPB Complaint, Form 185-2 Continuation Sheet Question 6. (emphasis added).
> II. "Appellant placed on administrative leave and was suspended based on **reprisal, disability and/or handicapping condition**, and in violation of federal law." *Id.* Form 185-4A Question 3. (emphasis added).
> III. "Agency engaged in unlawful acts of reprisal by putting Appellant on administrative leave and by suspending Appellant **due [sic] his medical condition and for engaging in protected activity**." *Id.* Form 185-4A Continuation Sheet Question 4. (emphasis added).
> IV. "Agency put Appellant on administrative leave and suspended Appellant **due to Appellant's disabling medical condition of situational depression**, and would not have taken the same or similar action against similarly situated employees outside of Appellant's class." *Id.* Form 185-4B Question 1. (emphasis added).

It is also noteworthy that Storkamp checked only the box indicating *disability* discrimination, leaving the box for *sex* discrimination unmarked. *Id.* Additionally, Storkamp's petition to the EEOC made no mention of gender discrimination, referring only to disability discrimination and retaliation. *See* [DE-35], Ex. 40, Pl. EEOC Petition.

While the administrative charge, EEOC or MSPB prescribes limitations to a plaintiff's subsequent civil suit, this guideline is not unyielding. The ultimate question centers on the "reasonable scope" of the administrative investigation spawned by the administrative charges. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Construing the administrative charges with the "utmost liberality," *Alvarado,* 848 F.2d at 460, the issue is whether Plaintiff's gender discrimination claim is within the reasonable scope of inquiry. Here, Storkamp's administrative complaint repeatedly stated his belief that he had been retaliated and discriminated against "due to prior protected activity" and his "disabling medical condition." *See*

8

[DE-32], Ex. 1, MSPB Complaint. An investigation of gender discrimination could not reasonably be expected to flow from a complaint that is void of any reference to females being treated more favorably than males. Therefore, Defendant correctly argues that Storkamp's failure to allege in his administrative charge any reference to gender discrimination bars him from making this claim in his Title VII action. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005) (finding retaliation claim was not reasonably related to administrative claim of sex discrimination when retaliation box had not been checked and narrative referred only to sex and pregnancy discrimination).

Assuming, *arguendo,* that, as Storkamp contends, a letter he submitted to WAMC deciding official Liffrig "clearly spelled out" instances of "discriminatory practices" which put agency investigators on notice of his gender discrimination claim, Storkamp's claim still would not survive Defendant's summary judgment motion. *See* [DE-45], Pl. Sur-Reply, p.3; [DE-33], Ex. 10, Pl. Letter to Col. Liffrig.

Storkamp's letter, submitted to Liffrig in response to the proposed thirty day suspension, contains multiple allegations concerning the actions of Storkamp's team leader, Sheila Huttner:

    I.    Huttner "grabbed a catheter from [Storkamp's] hand" and used an expletive while reprimanding him in front of patients and other staff.

    II.    Huttner kicked a trash can across a room in plain view of staff members.

    III.    An undated statement from LPN Salli Underwood alleging she heard Huttner state "I ought to have my husband come up here and beat [Storkamp] up."

See [DE-33], Ex. 10, Pl. Letter to Liffrig, pp. 6-7. The letter requests: (1) "a formal investigation immediately initiated into the physical and verbal assault and threat against myself by Ms. Shelia Huttner"; (2) "a formal investigation initiated into the malicious gossip spread by Denise McAuly . . ."; and (3) "that Womack cease its endless pattern of harassment, retaliation, and

9

discriminatory practices against me." *Id.* at p. 9. At its core, the letter expresses Storkamp's overall dissatisfaction with Huttner and with his employment circumstances:

> Although I have asked to change teams numerous times through my chain of command over the last several months, no action was ever taken. I made it clear that Ms. Huttner's actions toward me were inappropriate and I felt it would continue to escalate. I now find myself no longer working on a team, but in a nonexistent position, doing a job I don't particularly like, confined to an overcrowded room which is aggravating my existing medical condition.

*Id.* at pp. 6-7. Storkamp apparently believes his letter calling for an investigation into Huttner's actions *implies* a claim of discriminatory disciplinary practices based on gender.

In order to make out a *prima facie* case of discriminatory disciplinary practices based on gender, the plaintiff must demonstrate that: "(i) the plaintiff engaged in prohibited conduct similar to that of a person of another . . . sex . . . ; and (ii) measures enforced against the plaintiff were more severe than those enforced against the other person." *Moore v. Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985). Establishment of a *prima facie* case raises a rebuttable presumption that the employer acted with discriminatory intent in disciplining the employee.

If the plaintiff establishes a *prima facie* case, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) allows the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for the challenged disciplinary action. *See Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant meets its burden of production, the presumption of discrimination created by the *prima facie* case disappears, and the plaintiff then must prove that the defendant's articulated reason was a pretext for unlawful discrimination. *Id.* at 253-55.

Here, Storkamp insinuates his statement regarding wanting to shoot someone, which yielded a thirty day suspension, and Huttner's alleged verbal threat, should garner similar punishment. The record indicates Huttner denied making such a comment, and an investigation through the nursing chain deemed the allegation unfounded. [DE-36], Ex. 44, Dep. Maj. Landers, pp. 45-6, 73-4. Furthermore, the record indicates Huttner resigned after being questioned, and therefore it would have been moot to propose a suspension. [6] *Id.*

Even if Storkamp could establish his *prima facie* case for disparate treatment based on sex, Defendant has fully documented its legitimate, nondiscriminatory reason for Storkamp's administrative leave and suspension. After confirming Storkamp made the June 7, 2005, statement, and after receiving a complaint from a fellow nurse that Storkamp's subsequent actions made her uncomfortable, administrators reasonably placed Storkamp on leave pending an investigation. Storkamp contends the investigation was undertaken and "orchestrated in such a way as to produce a specific and desired outcome." *See* [DE-43], Pl. Resp. to Def. Mem. in Supp., p. 2; *See also Id.* at pp. 7-8 ("I have no doubt that this outcome had been communicated to [Liffrig] by his seniors who hade [sic] been trying to discriminate, embarrass, humiliate and harass me in order to solicit my resignation. I have no doubt that my malpractice suite [sic] against Womack and 3 subsequent EEO complaints as a result of their harassment was the motivation behind their proposed 30 day suspension."). Despite his assertion that the outcome had been predetermined, Storkamp was afforded an opportunity to refute the charges against

---

[6] In what appears to be almost an afterthought, Storkamp attempts to bolster his claim of gender discrimination by informing the court of a farewell skit in which a female nurse allegedly "mockingly" made reference to a "patient being taken out back and shot." [DE-43], Pl. Resp. to Def. Mem. Supp., p. 7-8. Storkamp seeks to compare his statement ("you know there's times (or sometimes) you'd just like to shoot somebody") with the statement made by the nurse in the skit and concludes: "Clark Clinic apparently considers a figure of speech from some to be funny and morally reprehensible by others!" *Id.* While it certainly would be in poor taste to make the alleged skit comment, a misguided attempt at comedy would not warrant a legitimate Administration concern for the safety of patients and staff at the clinic. As such, further discussion of this incident is not pertinent to this court's analysis of the instant issue.

11

him. In his defense, Storkamp contended that his statement was a "figure of speech" and never backed by intent to do harm. However, such an argument is immaterial as "it is the perception of the decision-maker which is relevant." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (citation omitted).

Additionally, deciding official Liffrig articulated the following considerations and conclusions as the basis for his decision to sustain the charges:

I. "The offense interfered with the efficient operation of the facility. The behavior led to a perception of harassment and intimidation that could have been avoided with modification of the behaviors."

II. "Employee is in direct patient case role which requires mature and thoughtful self control of behavior that may impact patient care . . . ."

III. "Employee has not demonstrated willingness to modify behavioral and interactive style with other employees there-by imposing an additional burden on managers and leaders of the organization."

IV. "Oral and written response from employee demonstrate clear lack of insight into nature of his behavior and their impact on others and the organizations well being."

V. "Rationalizations offered in oral and written replies were largely unrelated or at best, indirectly related to the core issues of dealing with the employee's behavior."

[DE-34], Ex. 31, Deciding Official's Checklist, pp. 2-8.

Defendant documented and articulated legitimate, nondiscriminatory reasons for taking action to protect the safety of its staff and patients. *See, e.g.,* [DE-33], Ex. 11, Dep. of J. Constantian, p. 6 (recalling hearing staff concerns about Storkamp's statement and a potential threat to the facility, staff and patients); [DE-45], Ex. 44, Dep. of M. Landers, pp. 8-9 (stating an investigation was initiated "[b]ecause of the seriousness of the statement and that another

12

employee felt threatened."). Storkamp simply has offered no evidence which indicates Defendant's proffered explanation is mere pretext as required by *Burdine*, 450 U.S. at 253-55.

Accordingly, Defendant is entitled to summary judgment as to plaintiff's claim of gender discrimination under Title VII.

## 2. Retaliation Claim

Storkamp also contends that his suspension was retaliation for his filing of EEO claims against Defendant in 2002 and 2004. *See* [DE-34], Ex. 36, MSPB Order and Summ. of Prehearing Conference, p. 2. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *See King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

Based on the record, Storkamp's ability to establish the first and second prongs of a *prima facie* case is not in dispute. Storkamp engaged in prior protected activity when he filed his 2002 and 2004 EEOC claims, and the instituting of a thirty day suspension could be considered adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006) (stating that to establish the element of an adverse employment action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . . which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal citations omitted). Therefore, to survive summary judgment, Storkamp must satisfy the third prong by coming forward with evidence from which a reasonable fact finder could determine a causal nexus between his prior EEOC filing and the adverse employment action.

13

Defendant argues Storkamp cannot establish a causal nexus since Major Landers stated in his deposition he had no knowledge of Storkamp's prior EEO activity. [DE-36], Ex. 44, Dep. of Maj. Landers, pp. 36-37. Additionally, Storkamp has offered no evidence to show that either Colonel Maul or Major Ponce, two other officials alleged to have retaliated against Storkamp, knew about the prior EEO claims. [DE-34] Ex. 25, Maul Mem., Ex. 26, Ponce Mem. The Fourth Circuit has explained that, in order to satisfy the causal connection element, "the employer must have taken the adverse action because the employee engaged in protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (rev'd on other grounds). However, in the instant case, the absence of knowledge theory is flawed as Colonel Liffrig, the sole deciding official, testified at the MSPB administrative hearing that he was informed of Storkamp's prior EEO activity. See [DE-34], Ex. 37, MSPB Dismissal of Appeal, p. 5.

Additionally, precedent dictates that Storkamp does not have to prove causation itself at the *prima facie* stage. The Fourth Circuit has held that evidence of "temporal proximity" between the protected activity and the adverse action, while "far from conclusively establish[ing] the requisite causal connection, . . . certainly satisfies the less onerous burden of making a prima facie case of causality." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). A definitive window of time between the protected activity and adverse action satisfying the causal requirement has yet to be determined. *See Ceberonics*, 871 F.2d at 454, 457 (finding a three month lapse between the protected activity and the adverse action sufficient to establish a causal

14

connection); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (finding a fourteen year gap between the protected activity and adverse action too tenuous to raise an inference of retaliation). Here, Storkamp filed an EEOC claim of discrimination in 2004. Because it is reasonable to presume the claim was on the radar of WAMC officials in October of 2005 when the suspension order was issued, this court believes the "temporal proximity" standard is satisfied and, therefore, Storkamp has made his *prima facie* case of retaliation.

A retaliation claim under Title VII also is analyzed using the *McDonnell Douglas* paradigm set forth above. Therefore, once the defendant has proffered a legitimate, nondiscriminatory reason for the adverse employment action, Storkamp "must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the employer was not its true reason, but was a pretext for retaliation." *McDonald v. Rumsfeld*, 166 F. Supp. 2d 459, 466 (E.D. Va. 2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).

Here, Storkamp's failure to offer evidence beyond unsubstantiated speculation that Defendant's actions were mere pretext is fatal to his retaliation claim. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) ("mere knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel action against that employee") (internal citations omitted). Storkamp's bald assertion that "I have no doubt that my malpractice suite [sic] against Womack and 3 subsequent EEO complaints as a result of their harassment was the motivation behind their proposed 30 day suspension" is insufficient to overcome Defendant's legitimate, nondiscriminatory explanation. [DE-43], Pl. Resp., p. 7. Attempting to prove his theory, Storkamp draws to the court's attention what he calls "hostile witnesses." [DE-45], Pl.

15

Sur-Reply, p. 4. Storkamp claims the people who were "asked to give statements and evaluations of my character other than the people I worked with at Clark Clinic were the very people I had prior EEO problems with." *Id.* Ironically, Storkamp repeatedly has stated that Liffrig, the deciding official, never read the statements and documents attached to investigator Ponce's report. *See, e.g.*, [DE-1], Compl. Attachment ¶ 6 ("Liffrig did not review or consider any attached exhibits or other documentation that Ponce investigated and compiled in this case that supplemented Ponce's memorandum."); [DE-45], Pl. Sur-Reply, p. 6 (noting Liffrig "[t]estified during his deposition that he hadn't even bothered to read the investigator's report."). Storkamp's own assertions that Liffrig did not read the character letters from the "hostile witnesses" undercuts any validity to his claim.

Moreover, Liffrig's documented perception that Storkamp's "[o]ral and written response[s] . . . demonstrate clear lack of insight into [the] nature of his behavior," coupled with Liffrig's determination that Storkamp's actions interfered with the operation of the facility and caused others to feel intimidation, demonstrates that Liffrig's decision was based on Storkamp's actions, and not based on retaliation for Storkamp's prior EEO activity. [DE-34], Ex. 31, Deciding Official's Checklist, pp. 2-8. Storkamp has neither offered nor forecasted evidence to rebut plaintiff's proffered legitimate, nondiscriminatory purpose for the adverse employment action.

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim under Title VII.

## B. Rehabilitation Act

### 1. Disability Discrimination

The court turns next to Plaintiff's claim of disability discrimination under the Rehabilitation Act ("RA"). Section 504 of the Rehabilitation Act of 1973, as amended and codified at 29 U.S.C. § 794(a), provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination[.]" Therefore, the RA requires a plaintiff prove that: (1) he has a disability under the RA; [7] (2) he is qualified for the employment in question; and (3) he suffered an adverse employment action due to discrimination solely on the basis of the disability. *See Doe v. Univ. of Maryland Medical Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). If the plaintiff establishes a *prima facie* case, once again the burden-shifting framework set forth in *McDonnell Douglas* comes into play.

As part of his *prima facie* case, Storkamp must demonstrate that he suffered an adverse employment action. Here, Storkamp alleges that his being placed on administrative leave and subsequent thirty day suspension satisfies this element. However, the standard for an adverse employment action in a claim under RA differs from that in a Title VII retaliation case. In a disability discrimination case, the plaintiff must show an "ultimate employment" action that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (internal quotation marks omitted). In the instant case, Storkamp's suspension was rescinded, his record expunged of all references to the action, and Storkamp was given all related back-pay and benefits. [DE-34], Ex.

---

[7] Defendant argues that Storkamp's failure to offer proof that he is "substantially limited in major life activities" precludes him from qualifying as an individual with a disability under the RA. *See* [DE-32], Def.'s Mem. in Supp., p. 15-20. The court finds there may be a question of fact as to whether Storkamp had a record of such a disability or was regarded as such, but ultimately determines such analysis is moot in regard to the instant motion.

17

35, Mem. Rescinding Suspension; *See also*, Ex. 34, Decl. of Q. Amos (noting measures taken to clear Storkamp's record of reference to the suspension). Additionally, Storkamp stated: "I continue to be a lead LPN within the clinic and have received an outstanding evaluation to include a monetary incentive award within the past year." [DE-43], Pl. Resp. to Def. Mot. Summ J., p. 12. Therefore, by Storkamp's own admission he has not suffered an action which limits his standing within the clinic. Because Storkamp cannot demonstrate he suffered an adverse employment action within the meaning of the RA, he fails to establish an essential element of his *prima facie* case.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim of disability discrimination is allowed.

**2. Hostile Work Environment**

Storkamp claims that he was subjected to a hostile work environment as a result of his alleged disabilities. *See* [DE-32], Ex. 1, Pl. MSPB Complaint, Question 7 continuation sheet, (requesting an end to perceived "workplace harassment"); [DE-33], Ex. 10, Pl. Letter to Liffrig, p. 7 ("Ms. Huttner is reacting to the vicious gossip of Ms. McAuly and others who were spreading their stories instead of letting the proper authorities take control and properly investigate the situation. They are responsible for causing the hostile environment."). Defendant addressed Storkamp's hostile work environment claim, stating "Plaintiff has presented absolutely no evidence" that he was harassed because of his "alleged disability." [DE-32], Def.'s Mem. in Supp., p. 15. Storkamp reiterated his claim in his Sur-Reply, stating "the agency created a very unhealthy work environment for me that remains hostile to this day." [DE-45], Pl. Sur-Reply, p. 7.

To prevail on a hostile work environment claim under the RA, Storkamp must prove that he: "(1) is a qualified individual with a disability; (2) was a subject to unwelcome harassment; (3) the harassment was based on [his] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer." *Fox v. GMC*, 247 F.3d 169, 177 (4th Cir. 2001). Additionally, Storkamp must show that his employer's conduct was objectively hostile, so that a reasonable person would understand it as such. *Id.* at 178. The Fourth Circuit has listed several factors to be considered when analyzing the objective component: (1) frequency and severity; (2) whether the alleged harassment was physically threatening or humiliating or merely an offensive statement; and (3) whether the alleged harassment unreasonably interfered with an employee's ability to do his job. *Id.*

Assuming, *arguendo*, that Storkamp can establish that he is disabled under the RA, there is no evidence before the court which would support a reasonable finding that any alleged harassment was severe or pervasive enough to create an abusive work environment. Here, Storkamp details his allegations against Huttner as stated above in the court's gender discrimination analysis. Additionally, Storkamp asserts that he is often assigned to "go to other areas" when another team is short staffed, and that the other nurses on his team have formed a "very tight clique." *See* [DE-33], Ex. 10, Pl. Letter to Liffrig, p. 6. When viewed objectively, the evidence offered by Storkamp is insufficient to support a hostile work environment claim. *See Edmonson v. Potter*, 118 Fed. Appx. 726, 730 (4th Cir. 2004) (per curiam) (unpublished) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "teasing, offhand comments, and isolated incidents (unless extremely serious)" are not actionable); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (working environment must be

19

"hostile or deeply repugnant," not "merely unpleasant," to be actionable). Furthermore, there is no evidence in the record that Storkamp is unable to perform his job. See [DE-43], Pl. Resp. to Def.'s Mot. Summ. J., p. 12 ("I continue to be a lead LPN within the clinic and have received an outstanding evaluation to include a monetary incentive award within the past year."). Storkamp simply has not satisfied his burden of demonstrating that he was subjected to a hostile work environment.

Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claim of a hostile work environment.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [DE-31] is ALLOWED in whole. The Clerk of Court is directed to CLOSE this case.

SO ORDERED.

This the 13th day of August 2009.

JAMES C. FOX
Senior United States District Judge